1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                         **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  UNITED STATES OF AMERICA, | CASE NO. 11cr920-BEN |
| 12                              Plaintiff, | |
| 13         vs. | ORDER DENYING MOTION TO DISMISS INDICTMENT |
| 14  IRVIN SANDOVAL-ORELLANA, | |
| 15                              Defendant. | |

16          Now before the Court is Defendant's Motion to Dismiss the Indictment Due to Invalid

17  Deportation (filed April 26, 2011).  This Court finds the underlying removal to be valid.

18  Alternatively, this Court finds that even if the underlying removal proceedings were

19  constitutionally flawed, Defendant has not shown that he suffered prejudice.  Therefore, the

20  motion to dismiss the indictment is denied.

21                                    **I. BACKGROUND**

22          Defendant is charged with being a Deported Alien Found in the United States in violation

23  of 8 U.S.C. § 1326.  The underlying deportation or removal took place in May 2010.  There is no

24  dispute as to the following salient facts.

25          Defendant is a citizen of Guatemala.  In 1992, Defendant entered the United States as a

26  legal permanent resident.  Between 1998 and 2003,  Defendant was convicted of three different

27  crimes in California superior courts.  In 1998, he was convicted of grand theft in violation of

28  California Penal Code § 487(c).  In 2001, he was convicted of forgery in violation of  California

Penal Code § 475(c).  In 2003, he pleaded *nolo contendere* to forcible acts of sexual penetration in violation of California Penal Code § 289(a)(1).  He was sentenced to three years in state prison.

On April 27, 2010, Defendant was issued a Notice to Appear by the Department of Homeland Security charging him as subject to removal for two reasons: (1) because of a conviction for an aggravated felony crime of violence based on 8 U.S.C. § 1227(a)(2)(A)(iii); (2) because of two convictions for crimes involving moral turpitude, based on 8 U.S.C. § 1227(a)(2)(A)(ii).  In May 2010, following a hearing, Defendant was removed from the United States.  On December 31, 2010, Defendant attempted to re-enter the United States.

## II.  CHALLENGING THE UNDERLYING REMOVAL ORDER

Defendant has moved to dismiss the indictment pursuant to 8 U.S.C. § 1326(d).  He argues that his removal in May 2010 was fundamentally unfair and violated his right to due process.  All individuals in the United States, including aliens, are protected by the Due Process Clause of the United States Constitution.  *United States v. Calderon-Segura*, 512 F.3d 1104, 1107 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 119 (2008).  Due process in removal proceedings is guaranteed by the Fifth Amendment.  *Ram v. Mukasey*, 529 F.3d 1238, 1241 (9th Cir. 2008).  Under § 1326(d), "an underlying removal order is fundamentally unfair if: (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects."  *Calderon-Segura*, 512 F.3d at 1107.

### A.  ALLEGEDLY DEFECTIVE REMOVAL PROCEEDINGS

Sandoval-Orellana asserts that his removal proceeding was fundamentally unfair.  The mainspring of his argument is that none of his prior criminal convictions amounted to an "aggravated felony."  This is important for two reasons.  One, it was one of the two grounds charged for removability.  If there was no "aggravated felony," then removal based upon § 237(a)(2)(A)(iii) of the INA would have been unsupported.  If unsupported, then the removal would have been fundamentally unfair.  If unfair, then it would not satisfy the prior deportation element for the current § 1326 charge.

Two, a conviction for an "aggravated felony" would have disqualified him from all three forms of discretionary relief from removal – forms of relief for which Sandoval-Orellana asserts

1    he was eligible to be considered.  Since the Immigration Judge did not advise him of the

2    availability of relief from removal at his removal hearing, the removal would have been

3    fundamentally unfair if Sandoval-Orellana had qualified for relief.  Again, if the removal was

4    unfair on the second ground,[1] then it would likewise fail to satisfy the prior deportation element of

5    the current § 1326 charge.

6                    ***1.  California Penal Code § 289(a)(1) Is an Aggravated Felony***

7            The term "aggravated felony" is defined in the definition section of the INA found at

8    § 101(a)(43), 8 U.S.C. § 1101(a)(43).  In § 1101(a)(43)(F), an "aggravated felony" is defined as "a

9    crime of violence" where the punishment is for a term of imprisonment of at least one year.  The

10   term "crime of violence" is further defined by reference to the federal criminal statues codified at

11   18 U.S.C. § 16.  Title 18 U.S.C. § 16 defines a "crime of violence" as follows:

12                          The term "crime of violence" means –
                            (a) an offense that has as an element the use, attempted use, or
13                          threatened use of physical force against the person or property of
                            another, or
14                          (b) any other offense that is a felony and that, by its nature, involves
                            a substantial risk that physical force against the person or property of
15                          another may be used in the course of committing the offense.

16           Sandoval-Orellana's prior conviction for violating California Penal Code § 289(a)(1) meets

17   this definition.  At the time of his conviction in 2003, § 289(a)(1) defined the crime as:

18                          Any person who commits an act of sexual penetration when the act
                            is accomplished against the victim's will by means of force,
19                          violence, duress, menace, or fear of immediate and unlawful bodily
                            injury on the victim or another person shall be punished by
20                          imprisonment in the state prison for three, six, or eight years.

21   Whether Sandoval-Orellana's conviction for § 289(a)(1) is a "aggravated felony" under the INA

22   requires looking at decisions in similar cases and resort to the categorical and modified categorical

23   approach as set forth in *Taylor v. United States*, 495 U.S. 575, 600--02 (1990); *Ramirez-*

24   *Villalpando v. Holder*, __ F.3d __, 2011 WL 2622389, *2 (9th Cir. 2011) (to determine whether a

25   criminal offense qualifies as an aggravated felony, courts apply the categorical and modified

26   ―――――――――――――

27           [1] There was a second ground for removal that was alleged and supported.  Sandoval-Orellana
     was also charged with having two convictions for crimes of moral turpitude.  It appears that this
     ground would be supported, but the question is not decided here.  *See Mendoza v. Holder*, 623 F.3d
28   1299, 1304 (9th Cir. 2010) (grand theft is manifestly a crime of moral turpitude as are other theft
     crimes).

1    categorical approaches set out in *Taylor*).

2                    *2.  Similar Cases*

3         There are no controlling decisions precisely on point.  Only two decisions have considered

4    California's § 289(a)(1): *Espinoza-Morales*, 621 F.3d 1141 (9th Cir. 2010) and *Osmancevic v.*

5    *Mukasey*, Appeal No. 06-73147, 2008 WL 2699912 (9th Cir. July 9, 2008).  Both are persuasive,

6    but not determinative.

7         *Osmancevic* presents the closest set of facts.  In *Osmancevic*, which the government relies

8    on in its brief, the court found an alien to be removable because his prior conviction for §

9    289(a)(1) qualified as an "aggravated felony" "crime of violence" under § 1101(a)(43)(F) and 18

10   U.S.C. § 16.  2008 WL 2699912 at *3.  The court noted that § 289(a)(1) is on California's list of

11   violent felonies, and according to *Lisbey v. Gonzales*, 420 F.3d 930, 933 (9th Cir. 2005), *cert.*

12   *denied*, 549 U.S. 868 (2006), when a state defines an offense as a "violent felony," a federal court

13   may decide that the offense is a crime of violence under 18 U.S.C. § 16.  *Id.*  In addition,

14   *Osmancevic* observed that § 289(a)(1) is a felony "involving a substantial risk of the use of

15   physical force."  *Id.*  While the decision is unpublished, and therefore not controlling precedent,

16   the reasoning is persuasive.

17        In *Espinoza-Morales*, which the defendant relies on in his brief, the court looked at

18   whether a § 289(a)(1) conviction justified a 16-level sentencing enhancement for a § 1326

19   conviction.  621 F.3d at 1144.  In other words, *Espinoza-Morales* looked at the United States

20   Sentencing Guideline § 2L1.2(b)(1)(A)(ii).

21        The Sentencing Guidelines specify a number of sentencing enhancements for prior

22   convictions in a § 1326 case.  For example, § 2L1.2(b)(1)(A) directs a 16-level increase for a

23   felony conviction that is: (i) a drug trafficking offense with a sentence exceeding 13 months,

24   (ii) *a crime of violence*, (iii) a firearms offense, (iv) a child pornography offense, (v) a national

25   security or terrorism offense, (vi) a human trafficking offense, or (vii) an alien smuggling offense.

26   Section 2L1.2(b)(1)(B) directs a 12-level increase for a drug trafficking offense with a sentence of

27   13 months or less.  Section 2L1.2(b)(1)(C) directs an 8-level increase for a conviction for an

28   aggravated felony.  Section 2L1.2(b)(1)(D) directs a 4-level increase for any other felony.  Under

§ 2L1.2(b)(1)(E) a 4-level increase is warranted where the defendant has three convictions for

misdemeanor *crimes of violence*.

Sentencing Committee notes help clarify the differences, but the nuances are subtle.

Consider that the phrase "crime of violence" may have different meanings. For purposes of

§ 2L1.2(b)(1)(A)(ii), the notes in the 2008 version explained,

> "Crime of violence" means any of the following offenses under
> federal, state, or local law: Murder, manslaughter, kidnapping,
> aggravated assault, forcible sex offenses, statutory rape, sexual
> abuse of a minor, robbery, arson, extortion, extortionate extension of
> credit, burglary of a dwelling, or any other offense under federal,
> state, or local law that has as an element the use, attempted use, or
> threatened use of physical force against the person of another.

At the same time, for purposes of § 2L1.2(b)(1)(C), the 2008 notes explained,

> For purposes of subsection (b)(1)(C), "aggravated felony" has the
> meaning given that term in 8 U.S.C. 1101(a)(43), without regard to
> the date of conviction for the aggravated felony.

Title 8 U.S.C. § 1101(a)(43), in turn, lists over 20 types of crimes which qualify as an "aggravated

felony." Of particular importance to this case is § 1101(a)(43)(F), which describes an "aggravated

felony" as,

> "a *crime of violence* (as defined in section 16 of title 18, United
> States Code, but not including a purely political offense) for which
> the term of imprisonment is at least one year."[2] (Emphasis added.)

As a result, there are at least three categories of crimes referred to in the Sentencing

Guidelines that carry the label "crime of violence." First, there is the § 2L1.2(b)(1)(A)(ii) "crime

of violence" which carries a 16-level increase. Second, there is the § 2L1.2(b)(1)(C) "aggravated

felony" "crime of violence" described in 18 U.S.C. § 16 which only carries an 8-level increase.

Third, there are misdemeanor "crimes of violence" described in § 2L1.2(b)(1)(E).

The separate categories carry different sentencing consequences and have different

elements. The § 2L1.2(b)(1)(A)(ii) "crime of violence" is defined in terms of crimes which have

as an element "the use, attempted use, or threatened use of physical force against the person of

another." This is the crime of violence analyzed in *Espinoza-Morales.* 621 F.3d at 1145 ("an

---

[2] "Congress incorporated § 16 as an aggravated felony under § 101(a)(43)(F) of the INA in 1990." *Leocal v. Ashcroft*, 543 U.S. 1, n.9 (2004).

offense qualifies as a 'crime of violence' under § 2L1.2(b)(1)(A)(ii) if it either (1) has as an element the use, attempted use, or threatened use of physical force against the person of another under the definition's . . . 'element' prong or (2) constitutes one of the crimes listed in the 'enumerated offense' prong of the definition").

At the same time, the less severe § 2L1.2(b)(1)(C) "aggravated felony" "crime of violence" takes its broader definition from 18 U.S.C. § 16. Of course § 16 has two parts: (a) and (b). Section 16(a) is like § 2L1.2(b)(1)(A)(ii) in that it includes a crime that has the use of force as an element. Section 16(b), however, sweeps more broadly and to include within its definition a crime that, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *See Prakash v. Holder*, 579 F.3d 1033, 1039 (9th Cir. 2009) (commenting in the immigration context on the "more expansive definition contained in § 16(b)" for an "aggravated felony").

The question posed today is whether Sandoval-Orellana's § 289(a)(1) conviction justified his removal to Guatemala and his ineligibility for discretionary relief from removal. It is the broader sweep of § 16(b) that encompasses a § 289(a)(1) offense and leads to the conclusion that Sandoval-Orellena's conviction is categorically an aggravated felony crime of violence. *Espinoza-Morales* decided only that § 289(a)(1) was not categorically a Sentencing Guideline § 2L1.2(b)(1)(A)(ii) crime of violence under the 2008 version of the Sentencing Guidelines. Although Defendant urges reliance on it, that decision never addressed the question of whether § 289(a)(1) would qualify as an aggravated felony crime of violence under § 16(b)'s broader sweep. Since it did not address the question, it does not control the outcome here.[3]

---

[3] There is another reason why *Espinoza-Morales* does not control the outcome in this case. *Espinoza-Morales* considered the 2008 version of § 2L1.2. Since that time, the Sentencing Committee notes have been amended. The amendment broadens the class of crimes defined as a § 2L1.2(b)(1)(A)(ii) "crime of violence." Specifically, it broadens the class to include within the subset of crimes of violence those "forcible sex offenses" "where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or *coerced*." *See*, U.S.S.G. cmt. n.1(B)(iii) (emphasis added). Thus, the definition now includes categorically § 289(a)(1) offenses where consent is coerced.

*Espinoza-Morales* found it decisive that the older version of the Guidelines did not cover consent obtained solely by psychological coercion and without physical force. The new Guidelines now include a forcible sex act where no physical force is used, but submission to the act is gained by coercion, and includes it within the category of "crimes of violence" for which there is a 16-level sentencing enhancement.

1    As a side note, Sandoval-Orellana argues that the two types of "crime of violence" should
2  be interpreted in the same way, relying on *United States v. Contreras-Hernandez*, 628 F.3d 1169,
3  1173 (9th Cir. 2011), *cert. denied*, 131 S. Ct. 2468 (2011), *United States v. Valencia-Barragan*, 608
4  F.3d 1103, n.1 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 539 (2010), and *Pelayo-Garcia v. Holder*,
5  589 F.3d 1010 (9th Cir. 2009).[4]  Defendant paints too broadly with these brushes.

6    *Contreras-Hernandez* does not help Defendant's argument.  It simply applied the approach
7  for solicitation crimes employed in *Prakash*.  *Contreras-Hernandez*, 628 F.3d at 1173.  In
8  *Prakash*, the court held that since rape qualifies as an "aggravated felony" under § 16(a), then
9  solicitation to commit rape qualifies under the broader sweep of § 16(b) and supports an alien's
10 removal.  *Prakash*, 579 F.3d at 1039.  *Contreras-Hernandez* then applied this principle to the
11 crime of solicitation of murder.  *Contreras-Hernandez* concluded that since murder qualifies for a
12 16-level enhancement as a "crime of violence" under § 2L1.2(b)(1)(A)(ii), then "solicitation of
13 murder is also a crime of violence under § 2L1.2(b)(1)(A)(ii)."  *Contreras-Hernandez*, 628 F.3d at
14 1173.  *Contreras-Hernandez* does not stand for the proposition that Sandoval-Orellana puts forth:
15 *i.e.*, that if § 289(a)(1) does not qualify as a "crime of violence" under § 2L1.2(b)(1)(A)(ii), neither
16 can it qualify under the broader immigration definition of "aggravated felony" under § 16(b).

17    Neither does *Valencia-Barragan* help Defendant's argument.  *Valencia-Barragan* dealt
18 with a conviction for sexual abuse of a minor.  "Sexual abuse of a minor" is specifically mentioned
19 both in the comment to § 2L1.2(b)(1)(A)(ii) and as a separate category of "aggravated felony"
20 under § 1101(a)(43)(A).  "Each subsection of § 1101(a)(43) provides an independent basis for
21 determining what qualifies as an aggravated felony."  *Prakash*, 628 F.3d at 1038.  In *Valencia-*
22 *Barragan*, the sentencing crime was being compared to the identical crime listed in
23 § 1101(a)(43)(A) – it was not being compared to the general crimes listed as crimes of violence
24 under § 101(a)(43)(F).

25

26    [4] Actually, Sandoval-Orellana writes that an "aggravated felony in U.S.S.G. § 2L1.2(b)(1)(C)
has the same meaning as in 8 U.S.C. § 1101(a)(43)."  Def. Reply to Response, at 2.  That is correct,
27 as noted in *United States v. Contreras-Hernandez*, 628 F.3d 1169, 1173 (9th Cir. 2011).  The court
assumes that he meant to argue, instead, that *Espinoza-Morales*' sentencing conclusion about
28 § 2L1.2(b)(1)(A) should apply equally in an immigration context.  But, *Espinoza-Morales* simply did
not address the question of whether § 289(a)(1) satisfied the definition of an aggravated felony in
either guideline subsection § 2L1.2(b)(1)(C) or 8 U.S.C. § 1101(a)(43)(F).

1   The crime of sexual abuse of a minor was also at issue in *Pelayo-Garcia,* upon which

2   *Valencia-Barragan* relies.  Putting a finer point on it, *Pelayo-Garcia* did not hold that all

3   sentencing definitions and immigrations definitions are to be interpreted the same way.  Rather, it

4   observed that a definition in the sentencing context "*is informed by* the definition of the same term

5   in the immigration context . . . and vice versa."  *Pelayo-Garcia*, 589 F.3d at n.1 (quoting *United*

6   *States v. Medina-Villa*, 567 F.3d 507, 511--12 (9th Cir. 2009), *cert. denied*, 130 S. Ct. 1545 (2010))

7   (emphasis added).  In the present case, while "forcible sex offenses" are specifically mentioned in

8   the Sentencing Guidelines, the category is not among those specifically listed as an aggravated

9   felony in the Immigration and Naturalization Act.  *Compare* U.S.S.G. § 2L1.2 cmt. (1)(b)(iii);[5]

10  *with* § 1101(a)(43)(A–U).

### 3. Elements of the § 289(a)(1) Offense

12  *Espinoza-Morales* does not control the outcome of this motion, but it is does describe the

13  offense of conviction.[6]  621 F.3d at 1147.  California's crime of forcible acts of sexual penetration

14  may be accomplished by several means under § 289(a)(1).  Specifically, the crime is complete

15  when the act of penetration "is accomplished against the victim's will *by means of* force, violence,

16  duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person."

17  (Emphasis added.)  In most instances, the means used to commit the crime include the use of

18  force, or the threatened use of physical force against another person.  Indeed, if the California

19  statute was limited to these means of accomplishing the crime, it would clearly qualify

20  categorically as a crime of violence for both the federal immigration context under §

21  1101(a)(43)(F), as described by § 16(a), and for the 16-level federal sentencing enhancement

22  under § 2L1.2(b)(1)(A)(ii).

---

[5] U.S.S.G. § 2L1.2 cmt. (1)(b)(iii): "Crime of violence" means any of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, *forcible sex offenses* (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced) statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.  (2010 Edition) (emphasis added).

[6] There, the court reviewed the 1999 version of § 289.  Sandoval-Orellena was convicted in 2003 under an amended version.  However, both versions are identical in describing how the crime can be accomplished (*i.e.*, by force or duress).

However, as pointed out in *Espinoza-Morales*, the crime may also be accomplished by means of "duress" and "duress does not necessarily involve the use, attempted use, or threatened use of violent physical force."  621 F.3d at 1147.  "'Duress' under section 289(a) involves psychological coercion." *Id.* Thus, the court held that § 289(a)(1) did not categorically qualify as a crime of violence under the element prong of § 2L1.2(b)(1)(A)(ii)'s definition.  *Id.* at 1148.  Likewise, because § 289(a)(1) may also apply to conduct "that does not involve any physical force outside of the act of unwanted penetration" or "extra physical force," *Espinoza-Morales* also held that it did not categorically qualify as a "forcible sex offense" under the enumerated offense prong of the 2008 version of § 2L1.2(b)(1)(A)(ii)'s definition.[7]  *Id.*

### 4. § 289(a)(1) Categorically Qualifies Under § 16(b)

To reiterate, at the immigration removal hearing, Sandoval-Orellana was found to be removable.  He was removable because at least one of his three criminal convictions qualified as an "aggravated felony" "crime of violence" under § 1101(a)(43)(F) which incorporates the two definitions in 18 U.S.C. § 16(a) & (b).  Under the categorical approach, his conviction for California's forcible acts of sexual penetration under Penal Code § 289(a)(1) did not qualify under § 16(a) as an "aggravated felony."  That is because § 16(a) uses almost exactly the same elemental language as is found in the pre-amendment sentencing definition in § 2L1.2(b)(1)(A)(ii).  And *Espinoza-Morales* held that § 289(a)(1) criminalizes more than the use of violent force.  It criminalizes psychological coercion in order to force the victim to submit to the unwanted sexual penetration.  *Id.* at 1148.  Therefore, § 289(a)(1) does not categorically meet the § 16(a) requirement of having as an element of "the use, attempted use, or threatened use of physical force against the person."

The crux of this motion, and ultimately the government's continued prosecution for § 1326, comes down to whether § 289(a)(1) meets the broader § 16(b) definition.  It does.  Section 16(b) defines a crime of violence as a felony that "by its nature, involves a substantial risk that physical

---

[7] Under the current amended version of § 2L1.2(b)(1)(A)(ii)'s definition, which applies today to Sandoval-Orellana, even § 289(a)(1)'s psychological duress conduct (without "'extra' physical force") now qualifies categorically as a "forcible sex offense" for sentencing purposes.  *Id.* at n.7 (acknowledging the 2008 amendment to the Guidelines may well have abrogated the physical, as opposed to psychological, force requirement for a "forcible sex offense").

1   force against the person . . . of another may be used in the course of committing the offense."

2          Although sexual penetration against one's will may be accomplished without the use of

3   any physical force because psychological coercion may suffice, it is precisely the type of felony

4   that "by its nature" brings with it a "substantial risk that physical force" will be used during the

5   course of the crime.  "The fact that it is possible to commit the offense without the use of physical

6   force does not take the offense outside the realm of § 16(b), so long as the substantial risk is

7   present." *Lisbey*, 420 F.3d at 932.  During the course of a § 289(a)(1) crime, the criminal actor

8   and the victim are already physically touching or within touching distance when the crime takes

9   place.  Emotions are likely elevated.  Some physical force will necessarily be employed against the

10  person of the victim, if only the amount of force necessary to accomplish "the act of unwanted

11  penetration." *Espinoza-Morales*, 621 F.3d at 1148.  It almost goes without saying that the victim

12  who is submitting to the unwanted penetration because of psychological coercion, may suddenly

13  change her or his mind.  At that point, the risk is that the criminal actor will likely use physical

14  force against the victim during the remaining course of committing the offense.  In fact, it may be

15  said that the risk is substantial from the outset whenever intimate physical touching effects a

16  sexual penetration against the will of the person whose body is being penetrated.  Sexual

17  penetration of another person's body is not the type of conduct that occurs accidentally or

18  negligently.  *Cf. Leocal*, 543 U.S. at 10 (D.U.I. offense could include force on another accidentally

19  or through negligence, thereby falling outside of § 16(b)).

20         Because of the substantial risk of violence inherent in the crime of forcible sexual

21  penetration by foreign object, California's § 289(a)(1) is analogous to the crimes of burglary of a

22  dwelling and eluding a police officer.  "The classic example is burglary." *Leocal*, 543 U.S. at 10.

23  In *Leocal* the Supreme Court explains, "[a] burglary would be covered under § 16(b) *not* because

24  the offense can be committed in a generally reckless way or because someone may be injured, but

25  because burglary, by its nature, involves a substantial risk that the burglar will use force against

26  the victim in completing the crime." *Id.*  The Ninth Circuit has previously "analogized sexual

27  offenses to burglary for purposes of the crime of violence analysis, because of the risk of violent

28  confrontation." *Lisbey*, 420 F.3d at 932.

The risk in burglary comes from "the possibility that an innocent person might appear while the crime is in progress" and the danger inherent in such face-to-face confrontation. *James v. United States*, 550 U.S. 192, 203 (2007). The risk in eluding a police officer "is inherent to vehicle flight." *Sykes v. United States*, 131 S. Ct. 2267, 2274 (2011) (holding that felony vehicle flight is categorically a "violent felony" under 18 U.S.C. § 924(e)(2)(B)).[8] "Even if the criminal attempting to elude capture drives without going at full speed or going the wrong way, he creates the possibility that police will . . . use force to bring him within their custody." *Id.* at 2273.

"The ordinary case of sexual assault involves at least as much violence and aggression as the ordinary case of burglary." *United States v. Terrell*, 593 F.3d 1084, 1091 (9th Cir. 2010), *cert. denied,* 131 S. Ct. 2094 (2011) (applying the categorical approach in the context of 18 U.S.C. § 924(e)(2)(B)'s residual clause). This is no less true for forcible sexual penetration by duress as it is for rape by deception. *Terrell* explains, "even in those cases where the rape is achieved by trickery or deception, that fact does not erase the ever-present possibility that the victim may figure out what's really going on and decide to resist, in turn requiring the perpetrator to resort to actual physical restraint that could then easily escalate into a *violent* confrontation." *Id.* at 1090 (emphasis in original).

In the same way, in cases where sexual penetration is accomplished by means of duress or psychological coercion, there remains the ever-present possibility that the victim may mentally decide to resist, in turn requiring the perpetrator to resort to additional physical force considering the intimate proximity and defenseless position of the victim. And like the crime of vehicular flight, in a § 289(a)(1) crime, physical force is inherent in the offense. The unlawful sexual penetration of the victim is accomplished by force. In the unusual cases where the victim submits to the unwelcome penetration because of psychological coercion or duress, there always looms the substantial risk that additional force will be used against the victim in the course of committing the

---

[8] 18 U.S.C. § 924(e)(2)(B)'s residual clause is similar to § 16(b) in defining a violent felony for purposes of the Armed Career Criminal Act. In particular, § 924(e)(2)(B)(ii) defines a violent felony as an offense that "involves conduct that presents a serious potential risk of physical injury to another." Compare this to § 16(b)'s definition of an offense that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

1   offense.  It is in the nature of the § 289(a)(1) offense and the proximity of the criminal and the

2   victim.  If it is true that "[s]hort of homicide, rape is the ultimate violation of self,"[9] sexual

3   penetration by a foreign object against one's will cannot be far behind.  And like rape, "it is hard

4   to imagine any crime that has a greater tendency to 'involve purposeful, violent, and aggressive

5   conduct.'" *Id.* at 1091 (quoting *Begay v. United States*, 128 S. Ct. 1581, 1586 (2008)).

6        In conclusion, Sandoval-Orellena's prior California conviction for violating § 289(a)(1)

7   categorically qualifies as an "aggravated felony" "crime of violence" under § 16(b), and therefore

8   under § 1101(a)(43)(F).  Because it categorically qualifies, there is no need for a modified

9   categorical analysis.  There was no fundamental unfairness arising from the Notice to Appear or

10  Sandoval-Orellana's removal from the United States.

11          **B.  CLAIM OF PREJUDICE FROM THE REMOVAL PROCEEDINGS**[10]

12       Sandoval-Orellana also claims that he suffered prejudice because the immigration judge

13  did not advise him he was eligible for relief from removal.  He further claims that it is plausible

14  that he was entitled to three forms of relief.  This argument also falls short.

15          *1.  Prejudice Requires a Showing of Plausible Grounds for Relief*

16       To succeed on the prejudice prong of the invalid-prior-deportation claim under § 1326(d), a

17  Defendant "must still show that he had plausible grounds for relief."  *United States v. Becerril-*

18  *Lopez*, 541 F.3d 881, 886 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 959 (2009) (citation omitted).

19  Sandoval-Orellana cannot make such a showing.

20               **a.  Cancellation of Removal**

21       First, Sandoval-Orellena claims he had a plausible claim for relief from removal in the

22  form of cancellation of removal under 8 U.S.C. § 1229b(a).  However, he does not satisfy two of

23  the three requirements.  Section 1229b(a)(3) eliminates cancellation as a form of relief for those

24  who have been convicted of any aggravated felony.  In light of the conclusion that his § 289

25

26          [9] *Terrell,* 593 F.3d at 1091 (quoting *Coker v. Georgia*, 433 U.S. 584, 597 (1977)).

27          [10] Dismissal of an indictment under § 1326(d) also requires a showing that the alien exhausted
his administrative remedies and that the alien was deprived of the opportunity for judicial review.
28  These issues are not addressed in this case because it is clear that Sandoval-Orellena cannot make a
    sufficient showing of prejudice, although it is unlikely that either exhaustion or deprivation can be
    shown in view of the aggravated felony nature of his § 289 conviction.

1   conviction is categorically an aggravated felony under the immigration law, Sandoval-Orrelena

2   could not have qualified.

3        Additionally, § 1229b(a)(2) requires residence in the United States continuously for seven

4   years after having been admitted.  While he was admitted in 1992, he was convicted of grand theft,

5   a crime of moral turpitude, in 1998.  *Mendoza v. Holder*, 623 F.3d 1299, 1304 (9th Cir. 2010)

6   (grand theft is manifestly a crime of moral turpitude as are other theft crimes); *Rashtabadi v.*

7   *I.N.S.*, 23 F.3d 1562, 1568 (9th Cir. 1994) (recognizing grand theft as a crime of moral turpitude);

8   *cf. Hernandez v. Cruz v. Holder,* __ F.3d __, 2011 WL 2652461 at *9 (9th Cir. Jul. 8, 2011) (a

9   generic theft offense is likely a crime of moral turpitude).  A conviction for a crime of moral

10  turpitude after an alien is admitted into the United States stops the "clock" according to

11  § 1229b(d)(1) (the "stop-time" rule).  *Padilla-Romero v. Holder*, 611 F.3d 1011, 1014 (9th Cir.

12  2010); *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1027 (9th Cir. 2005).  The grand theft

13  conviction stopped the clock at six years.  The clock did not begin to run again thereafter.

14  "[U]nder the stop-time rule, an alien's period of continuous presence ends upon the service of a

15  OSC or upon the commission of certain offenses, 'whichever is earliest.'  Allowing the seven-year

16  clock to re-start post-OSC would render the 'whichever is earliest' clause superfluous." *Ram v.*

17  *I.N.S.*, 243 F.3d 510, 518 (9th Cir. 2001). Six years of creditable continuous presence is too short to

18  meet the § 1229b(a)(2) requirement of seven continuous years.  Consequently, the claim of

19  entitlement to cancellation of removal is not plausible.

**b.  Voluntary Departure**

20

21       Next, Sandoval-Orellena claims he had a plausible claim for relief from removal in the

22  form of voluntary departure.  Under 8 U.S.C. § 1229c, the Attorney General may permit an alien

23  to voluntarily depart the United States instead of being formally removed.  However, Sandoval-

24  Orellena was not eligible because of his aggravated felony conviction.  *United States v. Ortiz-*

25  *Lopez*, 385 F.3d 1202, n.3 (9th Cir. 2004) (relief in the form of voluntary departure is categorically

26  barred for an alien who has been convicted of an aggravated felony any time after admission).

27  Therefore, voluntary departure was not a plausible form of relief.

28       Additionally, at the removal hearing the alien has to "establish by clear and convincing

- 13 -

evidence" that he has the means to depart.  8 U.S.C. § 1229c(b)(1)(D).  Sandoval-Orellana was not asked at the hearing whether he had the means to depart to his home country of Guatemala.  In support of his motion to dismiss the criminal charge, he only points out that prior to his removal last year, he was gainfully employed as a truck driver.  This is an insufficient showing.  Accordingly, he has not shown that voluntary departure was plausible, for the additional reason that he did not make a sufficient showing of having the means to voluntarily depart the United States.  *See e.g., United States v. Martinez-Valdez*, 2009 WL 979837 (9th Cir. 2009) (not error to limit eligibility for voluntary departure to those ale to pay travel expenses).

**c.  Discretionary Waiver**

Sandoval-Orellana was a legal permanent resident who was convicted of an aggravated felony (*i.e.*, the § 289(a) conviction) after the time of his admission to the United States.  Because of the aggravated felony, he could not qualify for a discretionary waiver from removal under 8 U.S.C. § 1182(h) or § 212(h) of the INA.

Sandoval-Orellana claims he should have been offered § 212(h) relief at the removal hearing in the form of a discretionary waiver.  Under § 1182(h) or § 212(h) of the INA, the Attorney General has discretion to waive an alien's removal.  But the discretion is not extended to legal permanent residents removed on the basis of an aggravated felony.  The provision states, "No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony."  *See Hing Sum v. Holder*, 602 F.3d 1092, 1094-95 (9th Cir. 2010) (LPRs and non-LPRs are not eligible for the § 212(h) waiver on equal terms; the waiver is unavailable to LPRs with an aggravated felony after their admission as LPRs).  Therefore, Sandoval-Orellena was ineligible for a § 212(h) waiver.  It follows that his ineligibility makes his claim of prejudice (from not being advised about the waiver) implausible.[11]

---

[11] Even if § 212(h) did apply, which it does not, Defendant has not cited a single decision in which the Attorney General waived inadmissibility for an alien who has been convicted of two crimes of moral turpitude and an aggravated felony, as has Defendant in this case.  Therefore, Defendant cannot show plausible § 212(h) relief.

### *Discretionary Waiver Requires a Showing of Extreme Hardship*

Even if his conviction was not an aggravated felony, for § 212(h) relief, Sandoval-Orellena would have had to demonstrate that his removal would visit upon his family extreme hardship. "To demonstrate the 'extreme hardship' required by the statute, the defendant must show that the consequences of his being removed would go beyond 'the common results of deportation,' such as a loss of financial support for relatives in the United States." *Becerril-Lopez*, 541 F.3d at 886. The alien must make a "detailed demonstration that the defendant provided 'non-economic familial support' or 'something more' than financial support. *Id.*

There are two declarations: one from the defendant and one from his wife.[12]  Both describe financial hardship.  Sandoval-Orellena's spouse and children had to move from Section 8 public housing and sell their SUV.  Their three young children missed their father's presence and their behavior suffered.  His mother lost the rent and medical appointment ride assistance she had received from Sandoval-Orellena.  While the declarations do not address the hardships the family would face had they accompanied him back to Guatemala, there is little doubt that economic hardship would have awaited.  Nevertheless, the hardship described in the declarations is not extreme, but common.  "The difficulties in having to move one's family elsewhere and anticipated difficulties in finding work have been held to constitute the common results of deportation." *United States v. Arce-Hernandez,* 163 F.3d 559, 564 (9th Cir. 1998) (family facing bleak economic conditions and wife in ill health not beyond common results of deportation of alien convict). Without a showing of extreme hardship to his family, Sandoval-Orellena has not made a plausible claim of prejudice from not being offered § 212(h) relief.

### **2.  No Plausible Grounds Demonstrated**

Sandoval-Orellana has not shown plausible grounds for relief in any form.  He was ineligible for cancellation of removal.  He was ineligible for voluntary departure.  He was ineligible for a discretionary waiver.  Even if he could have shown that the underlying removal

---

[12] Section 1182(h)(1)(B) requires extreme hardship to the citizen or LPR family member. Neither declaration describes the citizenship status of Defendant's wife or their three children.  It is assumed, however, for purposes of argument that one or more were United States citizens or legal permanent residents.

proceedings were fundamentally unfair (which they were not), he cannot establish the requisite prejudice.  Because he has not shown prejudice, he is not entitled to dismissal of his present criminal charge under § 1326.  *Id.* ("plausible" means more than "virtually impossible" under existing case law).

### III.  CONCLUSION

In view of the grounds for Defendant's removal and his criminal history, this Court finds that he has not shown a plausible ground for relief from removal proceedings.  Without a plausible ground for relief from removal, Defendant cannot succeed in his claim that under § 1326(d), his underlying removal proceedings were fundamentally unfair.  *Becerril-Lopez*, 541 F.3d at 886 (requiring both defects in the proceeding depriving due process *and* prejudice to render underlying deportation order unfair under § 1326(d)).

Therefore, Defendant's Motion to Dismiss the Indictment for Invalid Deportation is hereby denied.

DATED:  July 25, 2011

_____
Hon. Roger T. Benitez
United States District Judge